IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DEBORAH CLAYBAUGH,

       Plaintiff,

          v.                     CIVIL NO.: 08-1667 (MEL)

CONDADO PLAZA HOTEL AND CASINO,
et al.

       Defendants.

**OPINION AND ORDER**

## I.    PROCEDURAL BACKGROUND

On June 16, 2008, plaintiff Deborah Claybaugh ("Claybaugh") filed a complaint in the instant case against defendant Condado Plaza Hotel and Casino ("defendant") and its insurance companies alleging that negligent maintenance and operation of defendant's hotel facilities caused her to slip and fall in her hotel room's bathroom while she was a guest. (Docket No. 1.)  Pending before the court is a motion for summary judgment submitted by defendant arguing that plaintiff has failed to present competent evidence to show that defendant is liable under the applicable law, Puerto Rico's tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141  ("Article 1802"). (Docket No. 32.)  Plaintiff opposed the motion, defendant replied, and plaintiff sur-replied. (Docket Nos. 37, 43, 46.)

## II.    UNCONTESTED FACTS

On June 24, 2007, plaintiff checked into Room 856 at the Condado Plaza Hotel at around 1:00pm to 3:00pm. (Docket No. 32-2, ¶ 5; Docket No. 37-1, ¶ 5; Docket No. 37-2, ¶ 2; Docket No. 43-1, ¶ 2; Docket No. 40-4; Docket No. 32-3 at 26, ll. 5-13.) When plaintiff got to her room, she

1

turned the air off and "opened the patio door to get some heat in." (Docket No. 32-2, ¶ 9; Docket No. 37-1, ¶ 9; Docket No. 32-3 at 27, ll. 11-20.)  She noticed that the room and the shower area looked clean and neat, and she noticed no liquid substance on the floor of the bathroom or anywhere else in the room.  (Docket No. 32-2, ¶¶ 6-8; Docket No. 37-1, ¶¶ 6-8; Docket No. 32-3 at 26, ll. 14-25 and at 27, ll. 1-3.)  After she had been in the room about fifteen minutes, she went to the bathroom to shower, closing the door behind her in order to warm up the bathroom. (Docket No. 32-2, ¶¶ 10, 12; Docket No. 37-1, ¶ 10, 12; Docket No. 32-3 at 27, ll. 24-25, at 28, l. 1-7, and at 31, ll. 9-19.)

Prior to getting into the shower, plaintiff placed a white towel[1] provided by the hotel on the "cream color" tile floor[2] in front of the glass door of the shower. (Docket No. 32-2, ¶ 11; Docket No. 37-1, ¶ 11; Docket No. 37-2, ¶¶ 21-22; Docket No. 43-1, ¶¶ 21-22;  Docket No. 32-3 at 39, ll. 11-22, at 41, ll. 18-25, and at 42, ll. 1-6; Docket No. 40-10 at 53, ll. 9-15.) When plaintiff entered the shower, closing the shower door behind her, she did not notice whether the shower drain was dirty, whether the seals of the glass door were broken, or whether there was any "breakage" in the glass door, although she was not checking for such things. (Docket No. 32-2, ¶¶ 12-13, 15-17; Docket No. 37-1, ¶¶ 12-13, 15-17; Docket No. 32-3 at 28, ll. 5-15, at 29, ll. 20-22, and at 30, ll. 1-3.)  Since she noticed no breakage and nothing in the drain, she took no protective measures.  (Docket No. 32-2, ¶¶ 15-16; Docket No. 37-1, ¶¶ 15-16; Docket No. 32-3 at 29, ll. 14-25 and at 30, l. 1.)

Plaintiff took a shower for about fifteen to twenty minutes. (Docket No. 32-2, ¶ 18; Docket

---

[1] In her deposition, plaintiff described the towel as "not really a mat, it's just like a little square towel." (See Docket No. 37-2, ¶ 12; Docket No. 43-1, ¶ 12; Docket No. 32-3 at 39, ll. 17-18.)

[2] The Hotel's Director of Engineering, Franklin Domínguez, describes the tile as "like an off-white" or "cream color." (Docket No. 37-2, ¶¶ 49, 53; Docket No. 43-1, ¶¶ 49, 53; Docket No. 40-10 at 4-7 and at 53, ll. 9-15.) According to blueprints made by architect Leo A. Daly for the Condado Plaza Hotel's renovation of the building beginning in December 2006 or early 2007, guestrooms like Room 856 were to install  "Ceramic Tile (Floors); Product: Bianco B; Color/ Finish: H T 54/Bright; Dimensions: 16" x 16" x 3/8" thick, Manufacturer: Horizon Tile." (Docket No. 37-2, ¶¶ 57, 62; Docket No. 43-1, ¶¶ 57, 62; Docket No. 40-8 at 2; Docket No. 40-10 at 17.)

No. 37-1, ¶ 18; Docket No. 37-2, ¶ 12; Docket No. 43-1, ¶ 12; Docket No. 32-3 at 30, ll. 4-25 and at 31, ll. 1-8.)  Her shower was deliberately "very hot," such that her skin was red when she exited the shower. (Docket No. 32-2, ¶ 19; Docket No. 37-1, ¶ 19; Docket No. 32-3 at 30, ll. 4-25 and at 31, ll. 9-19.)  It became "all steamy and foggy" in the shower, which she described as "a sauna." (Docket No. 32-2, ¶ 24; Docket No. 37-1, ¶ 24; Docket No. 32-2 at 34, ll. 18-24.)  Nevertheless, she did not notice whether or not the mirror of the bathroom got steamed up, though it "probably" did, as conceded by plaintiff. (Docket No. 32-2, ¶ 20; Docket No. 37-1, ¶ 20; Docket No. 32-3 at 31, ll. 20-25, and at 32, ll. 1-3.)

While plaintiff was taking her hot shower, she did not check if the shower drain was working properly. (Docket No. 32-2, ¶ 21; Docket No. 37-1, ¶ 21; Docket No. 32-3 at 32, ll. 23-25 and at 33, ll. 1-3.)  She did not notice if the water began to pool in the shower area or whether it reached the top of the base, approximately five inches tall, under the shower's glass door.  (Docket No. 32-2, ¶¶ 22-23; Docket No. 37-1, ¶¶ 22-23; Docket No. 37-2, ¶ 11; Docket No. 43-1, ¶ 11; Docket No. 46-1, ¶ 11; Docket No. 14 at 9-10; Docket No. 32-3 at 33, ll. 4-25, at 34, l. 1-17, and at 56, ll. 18-25.)  At no time, during her shower or afterward, did plaintiff see water overflowing from the shower onto the bathroom floor. (Docket No. 32-2, ¶¶ 25-27; Docket No. 37-1, ¶¶ 25-27; Docket No. 32-3 at 35, ll. 10-25, at 36, ll. 1-6, and at 121, ll. 1-4.)

Plaintiff had left her hotel towel on the sink or "vanity" a little more than "an arm's length" from the shower.  While still wet, she opened the glass shower door and began stepping out of the shower to grab the towel. (Docket No. 32-2, ¶¶ 28-29; Docket No. 37-1, ¶¶ 28-29; Docket No. 37-2, ¶¶ 12-14; Docket No. 43-1, ¶¶ 12-14; Docket No. 32-3 at 36, ll. 6-22, at 37, ll. 1-4, at 39, ll. 23-25, at 40, ll. 1-4, at 44, ll. 5-25, at 45, ll. 1-25, at 49, ll. 21-25, at 51, ll. 4-22, and at 57, ll. 1-13.)  She

3

placed one foot on the hotel towel she had placed on the bathroom floor, noting that the towel was wet. Then, before she could place her second foot, she fell "back and like to the side" on the bathroom floor, hitting the lower part of her neck and shoulders on the toilet. (Docket No. 32-2, ¶¶ 30-31; Docket No. 37-1, ¶¶ 30-31; Docket No. 37-2, ¶¶ 9, 15-18, 20; Docket No. 43-1, ¶ 9, 15-18, 20; Docket No. 32-3 at 40, ll. 3-25, at 41, ll. 1-8, at 42, ll. 5-10, at 45, ll. 1–25, at 46, ll. 6-25, at 47, ll. 1-2, at 49, ll. 21-25, at 50, ll. 20-21, at 51, ll. 4-9, at 54, ll. 24-25, at 55, ll. 1-18, and at 57-59; Docket No. 40-8.)

Plaintiff was not looking at the floor when she stepped out of the shower, but she stated in her deposition that after she fell, she saw water on the bathroom floor. (Docket No. 32-2, ¶ 32; Docket No. 37-1, ¶ 32; Docket No. 37-2, ¶ 14; Docket No. 43-1, ¶ 14; Docket No. 32-3 at 44, ll. 1-3, at 56, ll. 24-25, and at 57, ll. 1-3.) In fact, she noticed that the floor of the bathroom was "soaked," and "there was water past the bathroom door" into the hallway. (Docket No. 37-2, ¶ 19; Docket No. 43-1, ¶ 19; Docket No. 32-3 at 43, ll. 15-26, at 44, ll. 1-3, at 55, ll. 23-24, and at 56, ll. 8-16.)

After the incident, plaintiff walked to the lobby to pick up food, ate some of it, took some store-bought medication for pain, spoke to her boyfriend over the phone, and went to bed. (Docket No. 32-2, ¶ 34; Docket No. 37-1, ¶ 34; Docket No. 37-2, ¶ 30; Docket No. 43-1, ¶ 30; Docket No. 32-3 at 61, ll. 1-15 and at 108, ll. 1-24.) She did not report the incident to the hotel. (Docket No. 32-2, ¶ 33; Docket No. 37-1, ¶ 33; Docket No. 32-3 at 60, ll. 7-8.)

Defendant has "Slip, Trip, & Fall Prevention" standard operating procedures, which require the hotel's Engineering Department to document inspections of the hotel's walking surfaces and handrails on a quarterly basis. (Docket No. 37-2, ¶¶ 84-85, 87; Docket No. 43-1, ¶¶ 81-85, 87; Docket No. 40-18.) The guest room preventive maintenance checklist for Room 856, typically

completed four or five times a year, depending on occupancy, provides for inspections of various features of the room, including "drain maintenance" and other plumbing features. (Docket No. 37-2, ¶¶ 71, 74; Docket No. 43-1, ¶¶ 71, 74; Docket No. 40-10 at 35, ll. 7-11, at 39, ll.11-19, and at 40, ll. 1-7; Docket No. 40-11 at 1.)   In Room 856, no such inspections were conducted in the approximately six months prior to the accident. (Docket No. 37-2, ¶¶ 72-73, 86; Docket No. 43-1, ¶¶ 72-73 86; Docket No. 40-10 at 36, ll. 14-19; at 37, ll. 4-19; at 38, ll. 17-19, at 39, ll. 1-19; Docket No. 40-11 at 1.)  Franklin Domínguez, the hotel's Director of Engineering, stated that no inspection was carried out in 2007 until July 4, 2007 because following the room's renovation beginning in late 2006 or 2007, "the room was so new there was no need to put people to check a new room." (Docket No. 37-2, ¶ 57, 72-73; Docket No. 43-1, ¶¶ 57, 72-73; Docket No. 46-4, ¶ 57; Docket No. 40-10 at 17, 39.)

As a result of her fall, plaintiff has suffered physical and emotional damages, has been unable to work, and is restricted in performing household activities. (Docket No. 1, ¶¶ 7-22; see Docket No. 32.)

## III.   LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment may be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'" Santiago-

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In order to defeat a properly supported motion for summary judgement, the opposing party must present more than a mere scintilla of "'definite, competent evidence'" demonstrating that a trial-worthy issue exists. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1993)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Suárez, 229 F.3d at 53.

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989)). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).

6

**B. Puerto Rico Tort Law**

Article 1802, Puerto Rico's general tort statute, provides for damages caused by a defendant's negligent behavior: "[a] person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann., tit. 31, § 5141.  In order to prevail in a general tort claim under Puerto Rico law, a plaintiff must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (citing Tórres v. KMart Corp., 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002)).  In the instant case, evidence of injury is not disputed.  The parties contest the second and third elements: whether defendant was negligent, and, if so, whether that negligence was the proximate cause of plaintiff's injury.

The element of negligence has two sub-elements: duty and breach. Vázquez-Filippetti 504 F.3d at 49.  "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407 (1973)).  A defendant breaches that duty if he acts or fails to act "in a way that a reasonably prudent person would foresee as creating undue risk." Vázquez-Filippetti, 504 F.3d at 49 (citing Pacheco Pietri v. ELA, 1993 P.R. Offic. Trans. 839,817, (1993) (Alonso, J., dissenting)).  Thus, a plaintiff must show that defendant failed to "exercise due diligence to avoid foreseeable risks." Lang v. Corporación de Hoteles, 522 F. Supp. 2d 349, 365-66 (D.P.R. 2007) (quoting Malavé-Félix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991)); see Vázquez-Filippetti, 504 F.3d at 49.

7

In particular, for claims based on allegedly dangerous conditions on commercial property ("premises liability claims"), a plaintiff must show not only that a dangerous condition existed which caused her injury, but also that defendant had either actual or constructive knowledge of the dangerous condition. Vázquez-Filippetti, 504 F.3d at 50; Mas v. United States, 984 F.2d 527, 530 (1st Cir. 1993); Tórres, 233 F. Supp. 2d at 278.  In this context, the applicable duty or standard of care has been articulated as follows:

> Under Puerto Rico law, a landlord is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection. There is no liability for harm resulting from dangerous conditions of which he does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated. Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself. The visitor is entitled, however, to assume that proper care has been exercised to make the premises safe for him, and he is not required, as in the case of a licencee, to be on the alert for possible defects.

Figueroa-Garcia, 364 F. Supp. 2d 140, 143 (D.P.R. 2005); see also Cotto v. C.M. Ins. Co., 16 P.R. Offic. Trans. 786 (1985) ("Undoubtedly a person or company that runs a business for profit, which in its commercial transactions deals directly with the public, must take all possible safety measures to ensure that its clients will suffer no harm.").

Alternatively, claims based on allegedly dangerous properties may take the form of a defective design (or negligent design) case.  In a negligent design case, the plaintiff claims not that defendant negligently maintained its property, but that the property was unsafe from its very conception.  In negligent design cases, the condition encountered by the plaintiff existed in the state intended by its owner, and the alleged defect, or negligence, is inherent in the property's design. Id. While "[t]he elements of a negligent design case are the same as other tort claims: injury, breach of duty, and proximate cause[,] . . . the plaintiff also 'bears the burden of establishing the applicable

8

standard of care.'" <u>Vázquez-Filippetti</u>, 504 F.3d at 50 (quoting <u>Prado Álvarez v. R.J. Reynolds</u>

<u>Tobacco Co.</u>, 313 F. Supp. 2d 61, 73 (D.P.R. 2004), aff'd, 405 F.3d 36 (1st Cir. 2005)).  In most

cases involving negligent design of buildings, the standard of care is not merely that of a "reasonably

prudent person," because the design of buildings often involves experience or knowledge that the

average lay person does not possess. <u>Vázquez-Filippetti</u>, 504 F.3d at 50-53.  When that is the case,

a plaintiff must present "specific evidence, usually in the form of expert testimony of an objective

standard of care" applicable to the design of the property at issue in order to allow the jury to

properly evaluate defendant's actions.[3] <u>Vázquez-Filippetti</u>, 504 F.3d at 53 (citing <u>Pérez v. United</u>

<u>States</u>, 444 F. Supp. 623, 626 (D.P.R. 1978)).

### C. Application of the Law

Plaintiff claims that defendant's negligence created a dangerous condition in the bathroom

of her room at the Condado Plaza Hotel because (1) the shower drain worked improperly, (2) the

hotel towel provided to serve as a shower mat had no anti-slip protection, (3) the shower's retaining

wall was too short, and  (4) the floor tiles were not anti-slipping tiles and the color of the tiles made

water on the bathroom floor invisible. [4] (Docket No. 1, ¶ 28.)  Focusing on the standard applicable

---

[3]Negligent design cases, whether in the context of buildings or in the context of product liability, typically require a plaintiff to present expert testimony.  The evidentiary requirements in negligent design cases are distinguishable from those in negligent manufacturing cases, which do not require that a plaintiff present expert testimony.  In negligent manufacturing cases, the theory is that a specific unit of the allegedly dangerous product was negligently produced. <u>Ortiz-Martínez v. Hyundai Motor Co.</u>, 602 F.Supp.2d 311, 315 (D.P.R. 2009). In those cases, plaintiff need only present evidence that the product performed differently than it was designed to perform, and expert testimony is not required to prove that the product in question "differs from the manufacturer's intended result or from other ostensibly identical units of the same product." <u>Perez-Trujillo v. Volvo Car Corp. (Sweden)</u>, 137 F.3d 50, 53 (1st Cir. 1998).  Conversely, in negligent design cases, the theory is that the allegedly dangerous product was designed such that it would be dangerous, even after production as intended. Generally, these determinations are not readily made by a lay person, and therefore they require the aid of expert witness testimony. <u>Vázquez-Filippetti</u>, 504 F.3d at 50-53.

[4]In her opposition to the motion for summary judgment, plaintiff also proposes the fact that defendant failed to equip the shower with a safety rail, as required by article 7, section 11(g) of Regulation 5080 of the Puerto Rican Tourism Company, which mandates minimum the requirements for hotels in Puerto Rico. (Docket No. 37-2, ¶ 79; Docket No. 43-1, ¶ 79; Docket No. 40-16 at 19.)  However, in support of the fact that the shower does not have a

to premises liability cases, plaintiff argues that defendant should have learned of and prevented the dangerous conditions through safety inspections and maintenance.  (See Docket No. 37 at 7.) However, of the four dangerous conditions alleged by plaintiff, only the improperly working drain properly falls within the rubric of premises liability.  Plaintiff has neither presented evidence nor articulated any facts supporting an inference that she slipped because of negligent maintenance of the shower retaining wall, towel, or tile floor.[5]  Rather, the evidence demonstrates that plaintiff encountered the shower retaining wall, towel, and tile floor just as defendant intended, the hallmark of a negligent design claim.[6]  See Vázquez-Filippetti, 504 F.3d at 51 (rejecting plaintiff's theory of negligence based on premises liability and applying negligent design rubric to alleged dangerous conditions).  Thus, the improperly working drain will be addressed under the legal framework applicable to premises liability claims, while the towel, shower retaining wall, and tile floor will be evaluated under the negligent design legal framework.

### 1. Premises Liability: Improper Drainage

To establish her premises liability claim based on improperly working shower drainage,

---

safety rail, plaintiff cites only a series of unauthenticated photographs of the room where the incident occurred. (See Docket No. 40-6 at 4-6.)  Defendant objects to the admissibility of the photographs based on lack of authentication. (Docket No. 43 at 4-5.)  Even assuming that the shower was not equipped with safety rails, in noncompliance with the regulation, plaintiff has not even argued – let alone directed the court to competent evidence –  that the lack of a safety rail was causally related to her fall (particularly in view that she alleges that she fell once she stepped outside the shower, not inside).  The court can do no more than speculate that a properly affixed safety rail would have saved plaintiff from falling to the floor.  Accordingly, to the extent plaintiff claims that defendant was negligent based on a failure to equip the shower with safety rails, that claim is DISMISSED. See Medina-Muñoz, 896 F.2d at 8 (noting that for purposes of summary judgment, court may ignore unsupported speculation).  Because the photographs are not material to the current disposition, the court has not relied on them, and the court reserves its ruling on the issue of authentication.

[5]Because the evidence presented does not support a rational inference that the shower retaining wall, towel, and tile floor were negligently maintained, to the extent that the premises liability legal framework can be applied to the those claims, they  must be dismissed. See Medina-Muñoz, 896 F.2d at 8.

[6]Indeed, plaintiff specifically noted that the shower area looked clean and neat when she entered Room 856. (Docket No. 32-2, ¶¶ 6-8; Docket No. 37-1, ¶¶ 6-8; Docket No. 32-3 at 26, ll. 14-25 and at 27, ll. 1-3.)

plaintiff must present evidence to show that it was an unreasonably dangerous condition and "that the defendant either knew or should have foreseen the risks created by the condition." See Vázquez-Filippetti, 504 F.3d at 50.

Plaintiff has shown, in light of the uncontested facts summarized above, that she entered the bathroom of Room 856 soon after arriving, closed the shower door, took a shower lasting approximately fifteen to twenty minutes, and slipped and fell onto a wet floor when stepping out of the shower over the approximately five inch tall shower retaining wall.  Plaintiff has also presented evidence suggesting that defendant had not performed preventative maintenance in the bathroom for a period of almost six months prior to her fall.  Defendant argues that plaintiff has presented no direct evidence to show that the drain was working improperly, emphasizing that plaintiff did not see water overflowing onto the bathroom floor or check or note any deficiencies in the drain, shower door, or bathroom floor.  Nevertheless, while defendant has explained the lack of preventative inspections by pointing out the room's renovation in late 2006 or 2007, the reasonableness of that explanation is a question fit for jury adjudication.  A rational jury could find, based on inferences drawn from plaintiff's testimony, that an improperly working drain due to lack of maintenance or preventive inspections was the cause for water to overflow onto the bathroom floor, and that the water foreseeably caused  plaintiff to fall.[7]  Taking into account the information regarding room inspections, a rational jury could conclude that defendant negligently maintained the shower drain, thus breaching its duty of care to guard against dangerous conditions on its property that it should have foreseen.  Compare Caliendo v. Trump Taj Mahal Assocs., Civil No. 03-5145 (JBS), 2006 WL

---

[7]In reaching this conclusion, we note that there is no evidence of water on the bathroom floor prior to the moment when plaintiff took a shower, that the shower lasted about 15-20 minutes, that when plaintiff stepped on the towel outside of the shower she noticed that it was wet, and that after plaintiff fell she noticed that floor of the bathroom was "soaked," and "there was water past the bathroom door" into the hallway.

3694605, at *3 (D.N.J. Dec. 13, 2006) (unreported) (denying defendant hotel's summary judgment motion on claim of negligent inspection of bathtub drain causing dangerous water accumulation) with Cline v. P.R. Ports Auth., 620 F. Supp. 2d 233, 238 (D.P.R. 2008) (granting defendant's summary judgment motion on slip and fall claim because plaintiff could not show how long dangerous condition had existed and defendant's evidence of regular maintenance prevented plaintiff from claiming that defendant knew or should have known of the dangerous condition).

### 2. Negligent Design: Shower Retaining Wall, Towel, and Floor Tiles

To establish her claims that the shower retaining wall, hotel towel intended for use as a bath mat, and floor tiles were negligently designed, allowing water to overflow onto the floor and causing her to slip and fall, plaintiff must present "specific evidence, usually in the form of expert testimony of an objective standard of care" applicable to the design of like items. Vázquez-Filippetti, 504 F.3d at 53. Plaintiff has not done so as to any of the alleged dangerous conditions.

As to the retaining wall, there is no evidence in the record as to the exact height of the retaining wall, and plaintiff ultimately relies on defendant's statement in the Joint Initial Scheduling Memorandum that the wall was "about five inches tall." (Docket No. 37-2, ¶ 11; Docket No. 43-1, ¶ 11; Docket No. 46-1, ¶ 11; Docket No. 14 at 9-10.) Even assuming that is the case, plaintiff has presented no evidence that five inches is not up to industry standards. See Vázquez-Filippetti, 504 F.3d at 53-55.

As to the hotel towel's alleged lack of anti-slip backing, plaintiff suggests that the use of such towels is negligent because "[i]t is well known to the general public that widely available bathroom towels are made of cotton or synthetic fibers (polyester) and have anti slip or non skid backing (also known as skid – resistant latex backing) to avoid falls because of water in the floor or in the rug,

generally made of latex."  (Docket No. 37-2, ¶ 83; Docket No. 43-1, ¶ 83; Docket No. 46-1, ¶ 83.)

This statement is supported only by unauthenticated photographs. (Docket No. 40-17.)  Nevertheless,

even accepting that the towels did not have anti-slip backing and that towels with anti-slip backing

are known to be generally available, plaintiff has presented no evidence that the hotel had a duty to

provide a towel with anti-slip backing.  See Caliendo, 2006 WL 3694605, at *3 ("Plaintiff's

allegation that the bathmat should have been designed differently . . . [is a] matter[] beyond lay

witness experience and require[s] the specialized knowledge of a design or safety expert." (citations

omitted)); Vázquez-Filippetti, 504 F.3d at 53-55; cf. Christopher v. Madison Hotel Corp., 875 F.2d

314 (4th Cir. 1989) (unreported) (upholding directed verdict for defendant hotel based on assumption

of the risk, where plaintiff claimed negligence based on risk created by terry cloth bathmat on vinyl

tile floor without slip resistant materials, because the condition was not latent and plaintiff himself

had put the bathmat on the floor).

Plaintiff's claim based on the allegedly dangerous slipperiness and color of the floor tile is

also a matter requiring proof of an objective standard.  Plaintiff has presented no evidence beyond

her own conclusory testimony that the tile in Room 856 was slipperier than the industry standard or

that its color made water any more invisible than any other color.[8]  Without specific evidence, for

example in the form of expert testimony, indicating an objective standard for hotel bathroom

flooring, the record does not contain any evidence upon which a rational jury could find that the tile

floor was negligently designed. See, e.g., Lee v. Phillips Petroleum Co., 2001 WL 604189 (N.D.Ill.

May 31, 2001) (unreported) (denying defendant's motion for summary judgment on claim based on

---

[8]Plaintiff proposes the fact that "[p]laintiff can recognize ceramic tiles which are slippery."(Docket No. 37-2, ¶ 24.) She cites to a portion of her deposition in which plaintiff discusses the type of flooring she has in her own house, which is "a non-skid linoleum-type tile" which is "also not solid white. Therefore, if there was water or something you might notice it." (Docket No. 32-3 at 53.)

slippery tile because plaintiff's expert testimony showing a "borderline tendency between slipperiness and non-slipperiness" raised an issue of material fact as to whether the floor was unreasonably dangerous) (citing Buscaglia v. United States, 25 F.3d 530 (7th Cir. 1994) (denying defendant's motion for summary judgment where plaintiff's expert's affidavit indicated that the composition of a post office's tile floor, either by itself or in combination with an accumulation of water, caused plaintiff to slip and fall)); Vázquez-Filippetti, 504 F.3d at 55 (reversing denial of defendant's motion for judgment notwithstanding the verdict because plaintiff presented no evidence regarding standard of care applicable to design of drive-through ATM facilities); Caliendo, 2006 WL 3694605, at *3.

## III.    CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Docket No. 32) is GRANTED IN PART AND DENIED IN PART.  Defendant's motion is denied as to plaintiff's claim that negligent maintenance of the shower resulted in improper drainage which caused her injury.  Defendant's motion is granted as to all other claims of negligence.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of July, 2010.

s/ Marcos E. López
U.S. MAGISTRATE JUDGE